# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **TERRY LYNN WEBSTER** | **CIVIL ACTION NO. 05-1698** |
| **VS.** | **SECTION P** |
| **RICHARD L. STALDER, ET AL.** | **JUDGE JAMES** |
| | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* by *pro se* plaintiff Terry Lynn Webster on September 19, 2005.[1] Webster is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is presently incarcerated at the River Bend Detention Center, Lake Providence, Louisiana. When he filed his complaint, he was incarcerated at the Union Parish Detention Center, Farmerville, Louisiana. However, this suit complains of conditions of confinement at the Rivers Correctional Center (RCC), Ferriday, Louisiana during a period of approximately one year starting June 8, 2004. Plaintiff has named LDOC Secretary Richard Stalder, RCC Regional Warden Leroy Holliday, RCC Warden Richard Spinner, RCC Assistant Warden Pat Smith, Concordia Parish Sheriff Randy Maxwell, the owner/CEO of RCC, and the Louisiana State Fire Marshal as defendants. Plaintiff seeks injunctive relief, compensatory damages of $1.5 million for "pain and duress," and a Federal investigation of all private prisons in Louisiana.

---

[1] Webster filed his complaint in the United States District Court for the Middle District of Louisiana; on September 27, 2005, the case was transferred to this court.

1

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons, it is recommended that his complaint be **DENIED** and **DISMISSED** because the complaint fails to state claims for which relief may be granted and is frivolous.

## STATEMENT OF THE CASE

A. Plaintiff's Claims

LDOC inmate Terry Lynn Webster complains about the following conditions of confinement at RCC during the period of his incarceration there which began on June 8, 2004, and ended on or about June 19, 2005.[2]

1. The facility housed 64 inmates in each of the two dormitories, making it impossible (according to plaintiff) for one guard to oversee 128 inmates.

2. The food provided is not "balanced or nutritious" and the facility does not employ a licensed dietician.

3. The facility has instituted a program known as the "Poor Boy Project" which sells food at night to inmates. The proceeds of the food sales are used to purchase equipment for the facility.

4. Plaintiff complained that he was denied access to courts because, due to his indigence, he was unable to send certified mail. Further, he complained that the facility employed one inmate-counsel to serve 500 inmates. He complained that the inmate counsel "on several occasions" assisted the corrections officers in "writing-up" inmates for disciplinary violations.

---

[2] In his complaint, plaintiff discussed an incident which occurred on April 19, 2005. Thereafter he stated, "In another 2 months I was shipped for no reason." [Doc. 1-1, p. 6]

2

5. The facility uses inmate labor to do "staff jobs."

6. On Friday, September 10, 2004, plaintiff "...was knocked into a steel girder and knocked down..." He sustained unspecified injuries to his back. On the following Monday plaintiff filled out a sick call slip. He was advised that sick call would cost him $7.00 and he contends that this is "...twice as much as state law allows for D.O.C. inmates..."

7. On April 19, 2005, plaintiff observed Corrections Officer Richardson and Inmate Watts putting ice into the de-lousing tank to spray newly arrived inmates. He complained to the Chief of Security and Captain who ordered Inmate Watts to lock-down, but took no action against Officer Richardson. Watts was then promoted to a higher security job and transferred to the Honor Dorm.

8. Within two months of April 19, 2005, plaintiff was transferred to the Union Parish Detention Center. He contends that he was a victim of discrimination and favoritism. Plaintiff claims that notwithstanding his perfect disciplinary record, Assistant Warden Smith assigned another inmate to handle plaintiff's complaints and that this action put plaintiff in danger.

B. Prayer for Relief

Plaintiff requests injunctive relief as follows:

1. An injunction prohibiting RCC and other facilities operated by defendant Holliday from operating programs like the "Poor Boy Project."

2. An injunction prohibiting RCC from disposing of any assets until plaintiff's lawsuit is resolved.

3. He also asks the court to order Assistant Warden Smith to supply the name and address of the owner/CEO of RCC and the name and address of the Louisiana State Fire Marshal. He

then asks that these individuals be ordered to correct all of the deficiencies noted by the plaintiff.

Plaintiff seeks $1.5 million in compensatory damages, plus attorney's fees, "for the pain and duress" he has suffered, and, a full Federal investigation of all prison facilities supervised by Defendant Holliday and all private prisons in Louisiana.

Plaintiff also sought appointment of counsel, but, on February 8, 2006, that motion was denied. [Doc. 8] On that same day, the undersigned completed an initial review of the complaint and directed plaintiff to amend his complaint to provide certain specific information. Plaintiff was told to provide the information by March 10, 2006. [Doc. 9] Instead of complying with the order, plaintiff submitted a motion for an injunction. Therein plaintiff asked the court to order the Louisiana Department of Public Safety and Corrections to transfer him to a Department facility with an "adequate law library." [Doc. 10]

**LAW AND ANALYSIS**

1. Frivolity Review

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven

4

consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). A district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint provides the rough contours of his theories of liability with respect to each named defendant. He was ordered to amend his complaint to provide additional factual information, but he chose to ignore the order.

Accepting all of plaintiff's allegations as true, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim for which relief may be granted and accordingly, recommends dismissal of the complaint.

2. Place of Confinement

In *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), and *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), the Supreme Court held that prisoner transfers do not implicate the Due Process Clause of the Fourteenth Amendment. (In *Meachum*, inmates at a medium security prison were transferred to a maximum security prison; in *Montanye*, a companion case, an inmate was transferred from one maximum security prison to another as punishment for a breach of prison rules. The Court rejected "the notion that any grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause." *Meachum*, 427 U.S., at 224, 96 S.Ct., at 2538 and further noted:

> The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.
>
> Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. *Id.*, at 224-225, 96 S.Ct., at 2538.

Finally, the Court observed that, a holding that "any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." 427 U.S., at 225, 96 S.Ct., at 2538.

In short, plaintiff has no liberty interest in the place of his confinement within the Louisiana prison system. To the extent that he claims prior transfers violated his constitutional

rights, such claims are clearly frivolous. To the extent that he seeks to enjoin future transfers, such claims are likewise frivolous. Finally, to the extent that he seeks an order directing the LDOC to place him in a particular institution, such a claim is also frivolous. His Motion for Injunction [Doc. 10] must be **DENIED.**

### 3. Additional Claims for Injunctive Relief

Plaintiff also prayed for injunctive relief in his original complaint seeking (1) to put an end to Warden Holliday's "Poor Boy" program and for an order directing the CEO/owner of RCC to correct the other deficiencies noted by the plaintiff: (2) only one guard to oversee 128 inmates; (3) serving meals which are neither "balanced" nor "nutritious;" (4) insufficient number of inmate counsel and inability of impoverished inmates to use certified mail; and, (5) overcharging for "sick call" in an amount higher than is approved by Louisiana law.

Plaintiff has offered no credible evidence or argument to establish that the "Poor Boy" Program in any way runs afoul of the Constitution or laws of the United States. Therefore, since his complaints about the "Poor Boy" Program do not give rise to a constitutional claim, he has failed to state a claim for which relief may be granted.

His claim that there are insufficient guards to oversee the inmates fares no better. First, this allegation is conclusory – plaintiff offers no facts to support his contention that the guard/inmate ratio at RCC is inadequate. Second, he makes no showing that the alleged insufficiency resulted in harm to himself or his fellow inmates. This complaint likewise fails to state a claim for which relief may be granted.

Plaintiff contends that prisoners are not provided a balanced and nutritious diet. Plaintiff offers no factual support for this conclusory allegation. The law requires only that prisons

furnish prisoners with <u>reasonably</u> adequate food. *Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir. 1977). Prison meals must be well balanced and contain nutritional value to preserve health. *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir.1977). Prisons are not even required to provide inmates with three meals a day. *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir.1986). Plaintiff's conclusory allegations concerning prison meals fail to state a claim for which relief may be granted.

Plaintiff claims that there are an insufficient number of inmate counsel and that this has resulted in a denial of access to the courts. "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). See *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Moreover, to prevail on an access-to-the-court claim, a prisoner must demonstrate that he has suffered "an actual injury" stemming from the alleged defendants' unconstitutional conduct. *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir.1999); *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir.1998).

Plaintiff claims that inmates in general are denied access to the courts. He was ordered to amend his complaint to provide some allegation of injury and he failed to do so. Plaintiff cannot prevail on this access to court claim absent proof of injury.

Further, his claim that indigent inmates cannot afford certified mail fares no better. Plaintiff does not contend that indigent plaintiffs were denied access to the courts because of

their inability to afford such postal services.

With respect to medical services, plaintiff complains that prisoners are charged for medical services and medicines received from jail medical staff.

The policy described by plaintiff is similar to "co-pay" policies or fee-for-service programs under which inmates must bear part of the cost of their treatment. Courts have found these polices constitutionally permissible so long as they do not interfere with timely and effective treatment of serious medical needs. *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir.1997) (co-pay policy); *Shapley v. Nevada Bd. of State Prison Comm's*, 766 F.2d 404 (9th Cir.1985) (co-pay policy); *Cameron v. Sarraf*, 2000 WL 33677584, at *3-5 (E.D.Va. March 17, 2000) (No. CIV.A.98- 1227-AM.) (co-pay policy); *Reynolds v. Wagner*, 936 F.Supp. 1216, 1225-1227 (E.D.Pa.1996) (fee-for-service-program); *Johnson v. Dept. of Public Safety and Correctional Services*, 885 F.Supp. 817 (D.Md.1995) (co-pay policy); *Hudgins v. DeBruyn*, 922 F.Supp. 144, 151 (S.D.Ind.1996) (prison policy which provided that inmates could obtain over-the-counter medicine at cost from institution commissary or as part of necessary treatment for serious medical condition did not constitute cruel and unusual punishment even though former policy generally provided medication free of charge in conjunction with inmate's use of sick-call process; inmate's serious medical needs would be met whether inmate was indigent or not). Nothing in the deliberate indifference standard guarantees inmates the right to be entirely free from cost considerations relevant to medical decisions. *Reynolds*, 128 F.3d, at 175. It is only when medical care is denied to inmates because of their inability to pay that deliberate indifference is implicated. See, e.g., *Collins v. Romer*, 962 F.2d 1508, 1514 (10th Cir.1992) (affirming district court finding that statute with no exceptions to the co-payment requirement

9

would be unconstitutional because it would deprive an inmate of meaningful access to medical care); *Johnson*, 885 F.Supp. at 820 (holding statute constitutional "because the policy mandates that no one shall be refused treatment for an inability to pay, [and] the co-pay policy will not result in a denial of care, even for inmates who abuse the system").

The medical services policy described passes constitutional muster. To the extent that the policy described violates Louisiana Law, such a contention fails to state a claim for which relief may be granted. Section 1983 provides relief for invasions of rights protected under <u>federal</u> law. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1997). To establish liability under 42 U.S.C. § 1983, a civil rights plaintiff must establish two elements: (1) state action, i.e., that the conduct complained of was committed under color of state law, and (2) a resulting <u>violation of federal law</u>, i.e., that the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States. See *Collins v. City of Harker Heights*, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Baker v. McCollan*, 443 U.S. 137, 142, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); see also *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir.2002).

### 4. Section 1997e

In addition to his requests for injunctive relief, plaintiff prays for $1.5 million in compensatory damages "for the pain and duress" he has suffered. Title 42 U.S.C. § 1997e(e) provides, "No federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Recently, the Fifth Circuit Court of Appeals determined that with respect to the application of the above cited statutory provision, "... it is the nature of the relief

sought, and not the underlying substantive violation, that controls: Section 1997e(e) <u>applies to all federal civil actions in which a prisoner alleges a constitutional violation</u>, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005).

Thus, a prisoner's claim for mental anguish, coupled with his failure to allege physical injury, triggers the statutory bar of §1997e(e) precluding recovery of compensatory damages for emotional or mental injuries allegedly suffered as a result of a purported constitutional violation. Since he has alleged no physical injury as a result of the activities complained of, plaintiff's claims for suffering and mental anguish are frivolous.[3]

### 5. Investigation

Finally, plaintiff demands an investigation of prison facilities. Again he fails to state a claim for which relief may be granted. There is no constitutional right to have someone investigated or prosecuted. See *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir.1990); *Autrey v. Mississippi*, 66 Fed. App'x. 523, 523 (5th Cir.2003) (per curiam).

### 6. Conclusion

Plaintiff was directed to amend his complaint to show proof that he exhausted available administrative remedies prior to filing suit. The Civil Rights of Institutionalized Persons Act, 42 U.S.C. §1997e(a), which makes the exhaustion requirement mandatory in prison conditions cases, provides as follows:

---

[3] Plaintiff did complain that he was injured on September 10, 2004, when he "...was knocked into a steel girder and knocked down..." However, he did not specify who was responsible for this injury, nor did he suggest that the injury was anything more than a *de minimis* injury.

11

> (a) Applicability of Administrative Remedies--No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Most institutions employ a multi-staged procedure which requires an inmate to appeal negative decisions to progressively higher authorities. (Further, to the extent that this plaintiff is an inmate in the legal custody of the Louisiana Department of Public Safety and Corrections, he may have been obliged to ultimately appeal adverse decisions to the Secretary of the Department as provided in Louisiana's Corrections Administrative Remedies Procedure Act.)

Exhaustion, as defined by 42 U.S.C. §1997e, does not occur until all available steps have been utilized. Plaintiff was directed to amend his complaint to demonstrate administrative exhaustion of his claims. His failure to do so suggests that he did not exhaust all claims prior to filing suit and his complaint is subject to dismissal on that basis as well.

### 7. Conclusion

It does not appear that plaintiff exhausted administrative remedies prior to filing this suit. Nevertheless, plaintiff's complaint clearly fails to state claims for which relief may be granted. His claims are manifestly frivolous and dismissal on these grounds is therefore recommended.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted all in accordance with the provisions of 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) and (2).

**IT IS FURTHER RECOMMENDED** that plaintiff's Motion for an Injunction seeking a

transfer to another prison [Doc. 10] be **DENIED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 10th day of April, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE